Hall, Judge.
The first question that arises in this case is, what estate was created in Cullen *204 Wood by the following clause contained in Jonas Wood's will: “My will and desire is, that if “either of my two sons, Cullen Wood and Law-“rence Wood, should die without lawful issue “begotten of their bodies, that, &c.”—It is a general dying without issue, which may happen 500 years hence, and not an event that must necessarily take place in any reasonable time. I therefore think, by this clause in the will, act estate tail was created in Cullen. Although the fact may have been that Cullen died without issue at the time of his death, that will not alter the case. The same construction must be now made upon the will, as would have been made upon it at the testator’s death—2 Bur. 878.
If the limitation to Jonas Wood is to be considered in the light of an executory devise, not being to take place till after an indefinite failure of issue, &c. it is too remote; and if it was too, remote in its creation, no event will warrant a different construction afterwards in support of it. If, then, an estate tail was created in Cullen, the act of 1784 converted it into a fee simple, and Cullen had a right to devise it. But whether he exercised that right or not, is the next question. The clause in Cullen’s will is very general and expressive; “Also all the remainder of my estate, whether within doors or out, that was not before given away. All the residue of my estate, and every part thereof, I give to my wife Sarah Wood, she paying all my just debts, funeral charges, &c. to her and her heirs for ever.” The word estate has a very general meaning; it includes both real and personal estate. The direction that the devisee shall pay his debts, is also a circumstance deserving of notice—3 Mo *205 dern 45——I think the land in dispute passed to Sarah Wood, by that clause in her husband's will, and that judgment should be entered for the plaintiffs.
Johnston, Judge.
The devise over in the will of Jonas Wood before the act of 1784 would have been held a contingent remainder, and not an executory devise; for though the contingency of one of the brothers, Cullen or Lawrence, dying without issue, might possibly take place in the life-time of the other, yet such contingency was not necessary to vest the remainder in the defendant, for it might also take place many years after they, were both dead, on a failure of issue in tail—the limitation over on the death of either of the brothers, is not confined to his dying without issue in the life of the survivor, but would take place on a failure of issue at any future period, however distant; and the death of Cullen in the life-time of Lawrence, though there were no failure of his issue till after the death of Lawrence, yet Jonas would be entitled to the remainder, so that it is evident the interest of Jonas did not depend on Cullen’s dying in the life-time of Lawrence—the devise over to Lawrence, can therefore be considered no other than a remainder, contingent on the failure of the issue in tail, of course void under the laws of this country.
The devise in the will of Cullen, after giving several specific legacies to his wife of negroes, stock, &c. he adds in the same clause: “Also all the remainder of my estate, both within or out, that was not before given away.” This gives his wife all the residue of his personal estate; and *206 had he gone no further, there might have been, some reason to conclude that he meant to give no more than personal estate. He then goes on as follows: “All the residue of my estate, and every part thereof, I give to my wife, Sarah Wood, she paying all my just debts, funeral charges, &c. to her and her heirs for ever.”—This last appears to me a distinct devise, independent of any thing that went before; and if it did not operate as a devise of his lands, it would be altogether nugatory, his whole personal estate having been before disposed of in the most unequivocal terms.
It is observable, that where the testator gives the remainder of his personal estate, he uses no words of inheritance, whereas in the last devise he expressly gives to her and her heirs for ever.
Wherefore it is my opinion, that under the will of Jonas Wood, Cullen took an estate in fee, and that the devise over to Jonas is void, the contingency upon which it was to take effect being too remote.
I am also clearly of opinion, that the plaintiff Sarah took an estate in fee in all the lands whereof her former husband Cullen Wood died seized; therefore that judgment should be entered for the plaintiffs.
Taylor, Judge.
The testator, by separate clauses in his will, devises to his two sons Cullen and Lawrence Wood, two several tracts of land, to them respectively in fee simple. In a third clause he desires, that if either of his two sons should die without lawful issue begotten of their *207 bodies, that his son Joseph should have the land of the one so first dying; and in that event, he devises the land of the one so first dying to his son Jonas in fee simple. In the succeeding clause he desires, that in case both his sons, Cullen and Lawrence, should die without lawful issue begotten of their bodies, James Wood should have the lands of the one so dying last in fee simple.
After the death of the testator, Cullen Wood entered upon the land devised to him, and died seized, leaving no issue; living his brother Lawrence Wood. The lessor of the plaintiff intermarried with the widow and devisee of Jonas.
The first question in this case is, whether the limitation in the will of Jonas Wood to his son Jonas, is effectual as an executory devise? The intention of the testator ought to be collected from the whole of the will taken together, and therefore though a fee-simple is given to Cullen by one clause, yet it is qualified and narrowed down by such words as would, before the act of 1784, have made it into an estate tail general. In consequence of that act, the estate devised to Cullen was a fee simple; and therefore the ulterior limitations to Jonas and James would have been clearly void, as common law conveyances. It is not necessary to shew that they cannot be supported as contingent remainders; for it is an axiom, that one fee cannot be in remainder after another. The limitation to James also is entirely unsupported by any of the principles which govern executory devises. It is limited to take effect after an indefinite failure of the brother who died last; and there is not in the will the *208 slightest ground upon which a restriction can ever be argued.
With respect to the devise over to Jonas, it seems to me that the arguments offered in support of it, are founded on a misconstruction of the will, which supposes that the limitation to Jonas is upon a contingency which must happen, if ever, within a life in being, and that consequently there is no tendency to a perpetuity. If the words of the will would fairly warrant the construction, that the testator meant the limitation to Jonas to take effect only in the event of one brother dying without issue, in the life-time of the other, nothing more would be necessary to support it as a good executory devise, according to the case of Pells vs. Brown—Cro. Jac. 590. But the words “so first dying,” must not be separated from the antecedent words, “without lawful issue begotten of their bodies;" for that were to make a supposition contrary to the express words of the will, that the testator did not mean to provide for the issue of his two sons; and would lead to this consequence, that Jonas should take the land of him who died first, though he might have left issue. But the intention clearly was, that Jonas should not take as long as there was any issue of the son who should die first. It follows, that if one of the sons had died leaving issue, which should afterwards fail in any indefinite period of time, living the issue of the other son, the limitation to Jonas would take effect, if the intention of the testator consisted with the rules of law. It is a limitation upon an unrestricted failure of issue, and would, if sanctioned, produce all the mischief which the law is so solicitous to avoid; and the cases to be found in the *209 books relative to perpetuities, apply a fortiori to the circumstances of this country, where restraints upon alienation are equally adverse to the spirit of the constitution and the form of government. It does not appear to me that this case is to be distinguished, in its material circumstances, from that of Forth vs. Chapman, 1 P. Williams, 667. There the testator gave the residue of his real and personal estate to his nephews W. & G. and if either of them should die, and leave no issue of their respective bodies, then he gave the premises to D. It was decided that the construction as to the freehold, was, that if W. or G. died without issue generally, and of course that the limitation over to D. was too remote. And were this the case of personalty, there are no expressions or circumstances in the will that would afford a ground for construing the words “first dying without heirs of his body lawfully begotten,” a dying in the life-time of the survivor, not-withstanding the inclination of courts to support such devises over.
The next enquiry is, whether the words of Cullen Wood's will are sufficiently comprehensive to convey these lands to his widow? After sundry bequests of chattels, the residuary clause gives to his wife all the remainder of his estate, whether within doors or without, not before given away—all the residue of his estate, and every part thereof, she paying all his just debts, &c. to her and her heirs for ever. The word estate comprehensive every thing a man owns, real and personal, and ought not to be limited in its construction, unless connected with some other word which must necessarily have that effect; or unless it is so used by the testator as to indicate his *210 intent, that it should not be received in its ordinary acceptation. But here he adds the words, “and every part thereof;” and the devise is accompanied with a condition, that his wife shall pay his debts out of it. It is also expressed in such language as is applicable to the devise of real property; and the impression made upon the mind by the whole tenor of this will is, that he did not mean to die intestate, as to any part of his property. The case of Tanner vs. Morse, in cases temp. Talbot, and the other cases therein, referred to, seem to be decisive on this question.
Macay, Judge.
Agreed in omnibus, and judgment for the plaintiffs.